```
                    UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF INDIANA
                         HAMMOND DIVISION
```

KYRAN SIMS,                      )
                                 )
      Plaintiff,         )
                                 )
  vs.                            )    NO. 2:08-CV-0309
                                 )
ARCELOR MITTAL,                  )
                                 )
      Defendant.         )

## OPINION AND ORDER

This matter is before the Court on Defendant ArcelorMittal USA Inc.'s Motion for Summary Judgment, filed on November 9, 2009. For the reasons set forth below, the Motion for Summary Judgment is **GRANTED**. Accordingly, the Clerk is **ORDERED** to enter judgment in favor of Defendant.

## BACKGROUND

Plaintiff, Kyran Sims ("Sims"), filed suit against Defendant, ArcelorMittal USA Inc. ("ArcelorMittal"), alleging he was subjected to employment discrimination in hiring in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e(5) and 42 U.S.C. § 1981.[1]

---

[1] Plaintiff filed two complaints against Defendant on October 22, 2008. The first, handwritten on a form entitled "Employment Discrimination Complaint," alleges ArcelorMittal violated Title VII and Section 1981, and comes attached with a copy of Sims' discrimination charge filed with the East Chicago Human Rights Commission, supporting EEOC Affidavit, EEOC right to sue letter and various supporting documents including communications between Defendant and Plaintiff concerning his placement in the employee applicant pool, his tentative hire date of December 17, 2007, and drug testing prescription and test results. The second complaint, also handwritten, is a form 42 U.S.C. Section 1983 Complaint and, while signed and verified by Plaintiff, is bare of any factual allegations and attachments. For the purposes of this motion, the two separate

ArcelorMittal has filed a motion for summary judgment pursuant to Fed.R.Civ.P. 56, claiming that there is no genuine issue of material fact and it is entitled to judgment as a matter of law on both claims.

At the outset, it should be noted that Plaintiff appears *pro se* in this matter. On November 9, 2009, Defendant filed and provided notice to Plaintiff advising him of the Fed.R.Civ.P. 56 requirements and the consequences for failing to respond. *See Timms v. Frank*, 953 F.2d 281, 285 (7th Cir. 1992). This Court is satisfied that the notice provided to Plaintiff was adequate. Plaintiff has not responded to Defendant's Motion. As such, pursuant to Fed.R.Civ.P. 56(e), the properly supported factual assertions in Defendant's Motion will be accepted as true for the purposes of this motion. Fed.R.Civ.P. 56(e); *Timms v. Frank*, 953 F.2d 281, 285.

Summary Judgment Standard

The standards that generally govern summary judgment motions are familiar. Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper only if it is demonstrated that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See*

---

complaints are treated as one complaint against Defendant alleging unlawful discrimination in hiring in violation of Title VII, Section 1981, and Section 1983. However, as there are no allegations of state action, Plaintiff's Section 1983 claim must fail and is dismissed.

*Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corporation. v. Catrett*, 477 U.S. 317, 322–23 (1986). In other words, the record must reveal that no reasonable jury could find for the nonmovant. *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 335 (7th Cir. 1991). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In deciding a motion for summary judgment, a court must view all facts in the light most favorable to the nonmovant. *Anderson*, 477 U.S. at 255; *Trade Finance Partners, LLC v. AAR Corp.*, 573 F.3d 401, 406 (7th Cir. 2009).

The burden is upon the movant to identify those portions of the "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," if any, that the movant believes demonstrate an absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the movant has met this burden, the nonmovant may not rest upon mere allegations but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009); *Becker v. Tenenbaum-Hill Assocs., Inc.*, 914 F.2d 107, 110 (7th Cir. 1990). "Whether a fact is material depends on the substantive law underlying a particular claim and 'only disputes over facts that *might affect the outcome* of the suit under governing law will properly preclude the entry of summary judgment.'" *Walter v. Fiorenzo*, 840 F.2d 427, 434 (7th Cir. 1988) (citing *Anderson*, 477 U.S. at 248).

"[A] party who bears the burden of proof on a particular issue may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations, that there is a *genuine* issue of material fact which requires trial." *Beard v. Whitley County REMC*, 840 F.2d 405, 410 (7th Cir. 1988) (emphasis in original). *See also Hickey v. A.E. Staley Mfg.*, 995 F.2d 1385, 1391 (7th Cir. 1993). Therefore, if a party fails to establish the existence of an essential element on which the party bears the burden of proof at trial, summary judgment will be appropriate. In this situation, there can be "'no genuine issue as to any material fact', since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

Facts

Defendant operates a steel production and finishing mill in East Chicago, Indiana. (Affidavit of Wendi Boos ("Boos Aff.") at ¶ 2). The Company is an equal employment opportunity employer and, in accordance with its policy, does not discriminate against employees or applicants on the basis of race or any other protected classification. (Boos Aff. at ¶ 2).

In December 2006, Plaintiff, a black male, applied for an entry level Utility Person position with Defendant. (Boos Aff. at ¶ 3). Thereafter Plaintiff took a general aptitude assessment at

the Company's Burns Harbor, Indiana facility in March of 2007 and was placed in the general hiring pool. (Boos Aff. at ¶ 3). Plaintiff was informed of this decision in April of 2007. (Boos Aff. at ¶ 3).

Following an interview on December 7, 2007, Defendant extended an offer of employment contingent on Plaintiff's passing a pre-employment drug test and medical review. (Boos Aff. at ¶ 4). Plaintiff indicated that he understood the terms of the conditional offer and Plaintiff was assigned a payroll number and tentative start date of December 17, 2007. (Employment Discrimination Complaint, p. 2; Boos Aff. at ¶ 4).

Defendant conducted the pre-employment processing session for Plaintiff on December 7, 2007, during which time the Plaintiff's hair drug sample was obtained. (Boos Aff. at ¶ 5, Affidavit of Ted Niemiec, M.D. ("Niemiec Aff.") at ¶ 2). During the drug test, Plaintiff signed chain of custody drug sample paperwork attesting that Plaintiff's hair sample was properly obtained for the drug test. (Niemiec Aff. at ¶ 2).

The Plaintiff's hair sample was then sent to Psychemedics Corporation for processing. (Niemiec Aff. at ¶ 3). The results of the drug test, which were positive for drug use, were received and reviewed by Dr. Niemiec, Director, Medical Department for ArcelorMittal. (Niemiec Aff. at ¶ 3). Dr. Niemiec, a licensed physician and certified Medical Review Officer, reviewed

Plaintiff's drug test report and verified the positive test results. (Niemiec Aff. at ¶ 3). On December 13, 2007, Wendi Boos, Human Resources Representative at Defendant's East Chicago plant, advised Plaintiff of the positive drug test results and that, as a result of the positive drug test, Defendant's contingent offer of employment was withdrawn. (Boos Aff. at ¶ 5). Boos informed the Plaintiff that he could re-apply after one year, in accordance with company policy. (Boos Aff. at ¶ 5). After being informed of the failed drug test, Plaintiff responded that he didn't do drugs and offered to be retested. (Employment Discrimination Complaint, p. 3). Boos, however, informed the Plaintiff that the Defendant's policy does not allow for retests and that it bases its employment decision on the Company's drug test results. (Boos Aff. at ¶ 5). Defendant's policy in this regard has been consistently and uniformly followed for all pre-employment, positive drug test results. (Boos Aff. at ¶ 5). Under the company's policy, the results are final and an applicant's submission of drug test results from another source is not accepted by the Defendant as a basis for changing its employment decision. (Boos Aff. at ¶ 5).

Plaintiff subsequently visited his doctor and received a prescription for a new drug test, which he took, and passed, on December 14, 2007. (Employment Discrimination Complaint, p. 4). Plaintiff contacted Defendant with the new test results, but Defendant didn't respond. (Employment Discrimination Complaint, p.

4). Plaintiff alleges that the Defendant's employee who administered the drug test intentionally switched hair samples, causing Defendant to fail the drug test. (Employment Discrimination Complaint, p. 2). He has, however, offered no evidence to support this assertion.

During 2007, Defendant hired 189 new employees for the position of Utility Person. (Boos Aff. at ¶ 6). All of these successful applicants were required to take and pass the Defendant's pre-employment drug test and all of the successful applicants, in fact, passed the drug test. (Boos Aff. at ¶ 6). Defendant hired the candidates without regard to race, hiring as follows: 49 Black (25.8 percent), 38 Hispanic/Latino (20.0) percent), 2 Asian/Pacific (1.1 percent) and 100 White (52.6 percent). (Boos Aff. at ¶ 6).

In addition, during 2007, 26 applicants, including 10 white applicants, failed the required pre-employment drug test and, like Plaintiff, were disqualified from employment with Defendant. (Boos Aff. at ¶ 7). The racial composition of the 26 applicants, all of whom were disqualified for employment, was as follows: White: 10 (38.5 percent), African American: 9 (34.5 percent), Hispanic/Latino: 6 (23 percent) and Asian/Pacific Islander: 1(4 percent) (Boos Aff. at ¶ 7).

Employment Discrimination Claim

Sims alleges race and gender discrimination in violation of Title VII and section 1981. The Seventh Circuit Court of Appeals has noted that, "Although § 1981 and Title VII differ in the types of discrimination they proscribe, the methods of proof and elements of the case are essentially identical." *McGowan v. Deere & Co.*, 581 F.3d 575, 579 (7th Cir. 2009)(quoting *Johnson v. City of Fort Wayne, Ind.,* 91 F.3d 922, 940 (7th Cir. 1996)). Title VII provides that it is unlawful for an employer to "discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Section 1981 provides that "all persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens..." 42 U.S.C. § 1981.

A complaining party can demonstrate actionable discrimination by either providing direct evidence of discriminatory motive or intent, or by relying on the indirect method outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Direct evidence, such as an admission by a decisionmaker that an adverse employment

action was motivated by discriminatory animus, "is evidence which, if believed by the trier of fact, will prove the particular fact in question without reliance upon inference or presumption." *Nagle v. Village of Calumet Park*, 554 F.3d 1106, 1114 (7th Cir. 2009). The only direct evidence of discrimination Plaintiff offers is an unsubstantiated allegation in Sims' complaint that he believes his hair sample was switched by the ArcelorMittal employee who administered the drug test in order to keep Plaintiff from being hired. (Employment Discrimination Complaint, p. 2). This naked assertion will not suffice at the summary judgment stage. Since Plaintiff has not provided any statements or other direct evidence of discriminatory motive or intent, Plaintiff must opt to rely on the indirect method.

The test for proving discrimination using the indirect method was first set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 803 (1973). A plaintiff may create a presumption of discrimination by establishing a *prima facie* case of discrimination. *Atanus v. Perry,* 520 F.3d 662, 672 (7th Cir. 2008). A *prima facie* case under Title VII or § 1981 can be shown by demonstrating that: (1) he is a member of a protected class; (2) he was qualified for the applicable positions; (3) he suffered an adverse employment action; and (4) similarly-situated persons not in the protected class were treated more favorably. *McGowan v. Deere & Co.,* 581 F.3d 575, 579 (7th Cir. 2009). Failure to

establish a prima facie case can justify summary judgment. *Winsley v. Cook County* 563 F.3d 598, 604-05 (7th Cir. 2009). However, if a plaintiff establishes a *prima facie* case, a rebuttable presumption of discrimination is created, and the burden of production shifts to the defendant to present evidence of a legitimate, non-discriminatory reason for the employment decision. *McDonnell Douglas,* 411 U.S. at 802; *Logan v. Caterpillar, Inc.,* 246 F.3d 912, 919 (7th Cir. 2001). If the defendant can produce such a legitimate, non-discriminatory reason, the burden then shifts back to the plaintiff to present evidence that the defendant's proffered reason was pretextual. *Atanus,* 520 F.3d at 672. Here, it is undisputed that Sims is a member of a protected class and that the denial of employment is an adverse employment action; however, Sims has failed to establish the second and fourth elements of the *prima facie* case. When an employee claims that he is qualified and that the employer is lying about the reasons for an adverse employment action, the second prong and the pretext question merge. *Peirick v. IUPUI Athletics Dep't.*, 510 F.3d 681, 687 (7th Cir. 2007). Therefore, the analysis begins with the fourth prong of the *prima facie* case.

In order to establish a *prima facie* case, a plaintiff must provide evidence that a similarly situated employee who is "directly comparable to [the plaintiff] in all material respects" was treated more favorably. *Atanus,* 520 F.3d at 673. The inquiry

is not a rigid one, and it asks "only whether 'members of the comparison group are sufficiently comparable to [the plaintiff] to suggest that [the plaintiff] was singled out for worse treatment.'" *Henry v. Jones*, 507 F.3d 558, 564 (7th Cir.2007) (citing *Crawford v. Indiana Harbor Belt R.R. Co.*, 461 F.3d 844, 846 (7th Cir. 2006)). Here, the proper inquiry would be to determine whether ArcelorMittal treated similarly situated employees of a different race differently from Sims, *e.g.*, if ArcelorMittal hired a white employee who failed the pre-employment drug screen. ArcelorMittal has offered evidence that it applied its pre-employment drug testing policy consistently and uniformly regardless of race. (Boos Aff. at ¶ 6, 7). Sims has not offered any evidence to the contrary. Thus, Plaintiff cannot establish a prima facie case of employment discrimination and his claim must fail. *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 331 (7th Cir. 2002).

The Defendant likewise contends that Plaintiff cannot establish the second prong of the *prima facie* case, that he was qualified to meet the potential employer's legitimate expectations. *McGowan v. Deere & Co.,* 581 F.3d 575, 579 (7th Cir. 2009). The Defendant contends that it has an established hiring practice that requires potential applicants to pass its pre-employment drug test and health review. (Boos Aff. at ¶ 4). The contingent job offer is rescinded for applicants who fail the drug test. (Boos Aff. at ¶ 4). As established by the record, Plaintiff was tested after

receiving a conditional offer of employment on December 7, 2007, and he tested positive for drug use. (Boos Aff. at ¶ 5; Niemiec Aff. at ¶ 3). Because of this unfavorable test result, Defendant rescinded its offer of employment. (Boos Aff. at ¶ 5).

Defendant contends that Plaintiff is unqualified for the position because of the failed drug test and that this is why he was not hired. Although Plaintiff failed to respond, his complaint alleges that the drug testing was not valid, and therefore the Defendant's assertion that the Plaintiff was not qualified is unfounded. As such, the analysis of Plaintiff's *prima facie* claim merges with the analysis of pretext. *See Peirick*, 510 F.3d at 687. Under the *McDonnell Douglas* framework, after a plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant to proffer a legitimate, non-discriminatory reason for the challenged action. It has a low threshold to meet. "The defendant need not persuade the court that it was actually motivated by the proffered reasons.... It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254-55 (1981). Once a reason for the action has been given, the burden shifts back to the plaintiff to show that the defendant's proffered reason is mere pretext, a deliberate falsehood designed to obfuscate a discriminatory animus. *See Hudson v. Chicago Transit Auth*., 375 F.3d 552, 561 (7th Cir.

2004) ("Pretext is more than a mistake on the part of the employer; it is a phony excuse.").

To establish pretext, a plaintiff must show that the employer's nondiscriminatory reason was dishonest and that the true reason was based on discriminatory intent. *Brown v. Ill. Dep't of Natural Res.*, 499 F.3d 675, 683 (7th Cir. 2007) (internal quotation and citation omitted). Here, Defendant rests on the failed drug test results as justification for its decision not to hire Sims. Sims challenges the validity of the justification, asserting that the drug test results were inaccurate because: 1) he doesn't do drugs, 2) he offered to retake the drug test, 3) he took and passed a second drug test, and 4) that he believes he failed the first test because the defendant's employee who administered the test intentionally switched hair samples. (Employment Discrimination Complaint, p. 3-4).

Defendant's use of drug testing as a qualification for employment is permissible, as is its policy not to allow for retesting, and failure to pass a drug test is a legitimate reason for denying employment. *See Scott v. Genuine Parts Co.*, IP 00-866-C-T/K, 2002 WL 31844681, 5 (S.D.Ind. March 29, 2002) (noting that failed drug tests are objective criteria that are relevant in employment decisions). Moreover, courts do not concern themselves with the wisdom or correctness of an employer's decision; instead they examine the honesty with which the belief is held. *See*

*Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 696 (7th Cir. 2006). Sims has offered no evidence of dishonesty. Plaintiff's subjective beliefs are not sufficient to create an issue of fact to defeat a motion for summary judgment. *See Denisi v. Dominick's Finer Foods, Inc.*, 99 F.3d 860, 865 (7th Cir. 1996); *Fairchild v. Forma Scientific, Inc.*, 147 F.3d 567, 574 (7th Cir. 1998).

Plaintiff cannot show that he was qualified for the position he sought and, thus, cannot make out a *prima facie* case. Moreover, Plaintiff has not demonstrated pretext. Accordingly, Sims has not satisfied his evidentiary burden and his claims must fail.

## **CONCLUSION**

For the reasons set forth above, ArcelorMittal's Motion for Summary Judgment is **GRANTED**. Accordingly, this case is **DISMISSED** and the Clerk is **ORDERED** to enter judgment in favor of Defendants.

**DATED: May 21, 2010**          **/S/RUDY LOZANO, Judge**
                                 **United States District Cou**